THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

EDGAR L. HANSON,

                    Plaintiff,

vs.

WELLS FARGO BANK N.A.,

                  Defendant.

No.  C10-1948Z

ORDER

THIS MATTER comes before the Court on defendant Wells Fargo Bank, N.A.'s ("WF") motion for summary judgment, docket no. 15.  Having reviewed the papers filed in support of, and opposition to, defendant's motion, the Court GRANTS the motion.

I.      **BACKGROUND**

       This case arises out of a dispute over certain real property owned by Plaintiff Edgar Hanson, and located at 215 Haddon Road, Anacortes, Washington, 98221 (the "Property").  Compl. at 2, docket no. 1.  On August 9, 2006, Hanson refinanced his

existing mortgage on the Property with WF.  Long Decl., Ex. A, docket no. 18.[1]  In

exchange for the $80,000.00 advanced by WF for the refinance, Hanson executed a

promissory note (the "Note") and deed of trust (the "Deed") in favor of WF.  Id.; see

also Lorber Decl., Ex. A, docket no. 16.  The Deed named Wells Fargo Financial

National Bank as the trustee.  Lorber Decl., Ex. A, docket no. 16.  WF perfected its

security interest in the Property by recording the Deed with the Skagit County Auditor

on August 28, 2006.  Id.

---

[1] Hanson moves to strike Exhibit A to the Long Declaration, docket no. 18, which
consists of a copy of the promissory note Hanson executed in August 2006.  Resp. at
1, docket no. 20.  Hanson contends that the promissory note must be stricken because
it is currently located in Montana and is not accessible in this district.  Id.  The location
of the document, however, is immaterial to its admissibility, and its authenticity is
attested to on personal knowledge by Ms. Long, which is sufficient under the rules of
evidence for purposes of summary judgment.  See Fed. R. Evid. 901(b)(1); Fed. R.
Civ. P. 56(c).  In the alternative, Hanson argues that the Long declaration, as well as
the Lorber Declaration, docket no. 16, and the Hansen Declaration, docket no. 17,
should be stricken because the declarations were filed in contravention of a Consent
Order between WF and the United States Treasury Department.  See id., Ex. A.
However, the Consent Order cited by Hanson provides:

> Nothing in this Stipulation and Consent or this Order, express or
> implied, shall give to any person or entity, other than the parties hereto,
> and their successors hereunder, any benefit or any legal or equitable
> right, remedy or claim under the Stipulation and Consent or this Order.

Id., Ex. A at 27.  By its express terms, Hanson does not have standing to enforce the
Consent Order.  Moreover, the Consent Order does not preclude WF from submitting
the subject declarations in this case.  To the contrary, the Consent Order merely
provides that WF must develop new policies and procedures for conducting
foreclosures.  See id. at 25.  Accordingly, the Court DENIES Hanson's motions to
strike.

Hanson made regular monthly payments on the Note until August 2009. Hansen Decl., Ex. A, docket no. 17.  Since then, Hansen has made no payments on the Note.  Id.  On January 21, 2010, WF recorded an appointment of successor trustee with the Skagit County Auditor that named Bradley Boswell Jones, P.S., ("BBS") as the successor trustee on the Deed.  Lorber Decl., Ex. B, docket no. 16.

On August 15, 2010, fourteen months after Hanson stopped making payments on the Note, BBS initiated nonjudicial foreclosure proceedings by issuing a notice of trustee's sale.  Id. Ex. C.  Around the time BBS issued the notice of trustee's sale, Hanson sought and obtained a "forensic loan audit" (the "Audit Report") that purported to show that WF violated a number of federal laws when it originated the loan in 2006.  See Resp., Ex. B, docket no. 20.[2]  The Audit Report also stated that WF had securitized the Note, and transferred it to an investment trust.  Id.

On December 2, 2010, Hanson filed the present lawsuit seeking to halt the nonjudicial foreclosure commenced by the trustee in August.  Compl., docket no. 1. Shortly thereafter, Hanson recorded a lis pendens against the Property.  Lorber Decl., Ex. D, docket no. 16.

II.  **DISCUSSION**

Although plaintiff's complaint is not a model of clarity, it appears to seek relief from WF's nonjudicial foreclosure, alleging that all of the relevant documents,

---

[2] A more complete version of the Audit Report that has been authenticated by its author is attached as Exhibit C to the complaint.  Compl., Ex. C (Mathews Aff.), docket no. 1.

including the Deed, the Note, the appointment of successor trustee, and the notice of

trustee's sale are fraudulent and/or void, and by extension, that WF has no authority to

proceed with the foreclosure.  Compl., docket no. 1.  In the alternative, plaintiff

contends that Washington's Deed of Trust Act ("WDOTA") is unconstitutional under

the Thirteenth and Fourteenth Amendments to the United States Constitution.  Id.

Plaintiff also contends that the Court should quiet title in his favor, and award damages

for WF's alleged violations of the Truth in Lending Act ("TILA") and the Real Estate

Settlement Procedures Act ("RESPA").[3]  Id.  WF has moved for summary judgment

on all of plaintiff's claims.  Mot., docket no. 15.

## A.    Summary Judgment Standard

The Court shall grant summary judgment if no genuine dispute of material fact

exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a) (2010).  The moving party bears the initial burden of demonstrating the absence

of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

A fact is material if it might affect the outcome of the suit under the governing law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In support of its motion

for summary judgment, the moving party need not negate the opponent's claim,

Celotex, 477 U.S. at 323; rather, the moving party will be entitled to judgment if the

evidence is not sufficient for a jury to return a verdict in favor of the opponent.

---

[3] Plaintiff's complaint also makes passing references to the Fair Debt Collection
Practices Act and Home Ownership Equity Protection Act, although it contains no
allegations relating to these statutes.  See Compl. at ¶¶ 12, 25, docket no. 1.

ORDER - 4

Anderson, 477 U.S. at 249.  To survive a motion for summary judgment, the adverse party must present affirmative evidence, which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.  When the record taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted.  See, e.g., Beard v. Banks, 548 U.S. 521, 529 (2006).

### B.      Hanson's Withdrawn Claims

In response to WF's motion for summary judgment, Hanson has requested leave to withdraw his claims for violations of TILA, violations of RESPA, and for quiet title.  Resp. at ¶¶ 8-9, docket no. 20.  Hanson also requests leave to withdraw his constitutional challenges to the WDOTA.  Id. at ¶ 5.  However, a plaintiff may not voluntarily withdraw claims after the defendant has filed a motion for summary judgment without first obtaining leave of the Court.  Fed. R. Civ. P. 41(a)(1)(A)(i). Accordingly, the Court construes Hanson's response as a motion for voluntary dismissal.

"The decision to grant a voluntary dismissal under Rule 41(a)(2) is addressed to the sound discretion of the District Court."  Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143, 145 (9th Cir. 1996).  In exercising its discretion, "[a] district court may consider whether the plaintiff is requesting a voluntary dismissal only to avoid a near-certain adverse ruling."  See Terrovona v. Kincheloe, 852 F.2d 424, 429 (9th Cir. 1988).  Here, Hanson's claims face certain dismissal with prejudice.  Hanson's TILA

and RESPA claims arose, if at all, when Hanson executed the Note and Deed in August 2006.  Therefore, Hanson's claims necessarily arose more than four years before he initiated the present lawsuit, and are barred by the respective one and three-year limitations periods in TILA and RESPA.  See 15 U.S.C. § 1640(e); 12 U.S.C. § 2614.[4]

Plaintiff's constitutional arguments also lack merit.  As the Washington Supreme Court held in 1977, the WDOTA does not violate the due process clause of the Fourteenth Amendment to the United States Constitution.  See Kennebec, Inc v. Bank of the W., 88 Wn.2d 718, 726, 565 P.2d 812 (1977) ("We hold that [the WDOTA] . . . is passive state involvement and does not constitute significant 'state action' and, therefore, it is [not] violative of the due process clause of the Fourteenth Amendment.").  This Court sees no compelling reason to depart from the reasoning in Kennebec.[5]

Similarly, plaintiff's claim that the United States Constitution's Thirteenth Amendment prohibition on involuntary servitude somehow invalidates the WDOTA is frivolous.  The Thirteenth Amendment prohibits the "compulsion of services by the

---

[4] To the extent plaintiff contends that WF is liable for common law fraud, any such claim is also barred by Washington's three-year limitations period.  RCW 4.16.080(4).

[5] The Court further notes that plaintiff's contention that the WDOTA provides no nonjudicial remedies to individuals is factually incorrect.  Plaintiff has the option to halt foreclosure proceedings through the payment of the delinquent amounts owing on the Note.  RCW 61.24.090(1) ("At any time prior to the eleventh day before the date set by the trustee for the [foreclosure] sale . . . the borrower . . . shall be entitled to cause a discontinuance of the sale proceedings by curing the default or defaults set forth in the notice.").

use or threatened use of physical or legal action." <u>United States v. Kozminski</u>, 487 U.S. 921, 948 (1988).  Plaintiff has not been compelled to perform any services.  To the contrary, plaintiff voluntarily entered into a contract with WF and is free to walk away at any time, which cannot give rise to a Thirteenth Amendment claim.  <u>See</u> <u>Wicks v. S. Pac. Co.</u>, 231 F.2d 130, 138 (9th Cir. 1956) (holding that the defendant union did not violate the thirteenth amendment prohibition on involuntary servitude where "[t]here is no contention that [the plaintiff union members] cannot freely leave their employment . . . and thus escape the payment of dues, fees and assessments to these railroad unions.").

Finally, plaintiff's quiet title claim is necessarily derivative of, and dependent upon, the vitality of his other claims.  Plaintiff is not entitled to an order quieting title in his favor if WF is within its rights to proceed with the foreclosure.  As plaintiff's other claims lack merit, his quiet title claim is equally deficient.

The Court concludes that plaintiff has moved for voluntary dismissal of the foregoing claims in a last-ditch effort to avoid an adverse ruling on WF's motion for summary judgment.  Therefore, the Court DENIES plaintiff's motion for voluntary dismissal.  <u>See</u> <u>Terrovona</u>, 852 F.2d at 429.  The Court further GRANTS WF's motion for summary judgment and DISMISSES plaintiff's withdrawn claims with prejudice.

**C.     Hanson's Remaining Claims**

Hanson raises two additional arguments against the dismissal of the case.  First, Hanson contends that he is not in default of his obligations under the Note.  However,

WF submits evidence demonstrating that Hanson has failed to make any payments on the Note since August 2009.  Hansen Decl., Ex. A, docket no. 17.  Nonpayment is an event of default under the express terms of the Note.  Long Decl., Ex. A at § 12, docket no. 18.  Hanson submits nothing to refute WF's evidence of non-payment except for his conclusory, unsupported statement that he is not in default, which is insufficient as a matter of law to preclude summary judgment.  See Clouthier v. Cnty. of Contra Costa, 591 F.3d 1232, 1252 ("[C]onclusory assertions are insufficient to avoid summary judgment.").

In the alternative, Hanson argues that the Note, the Deed, and the other related mortgage documents are invalid or otherwise unenforceable by WF.  However the only evidence Hanson submits in opposition to summary judgment is the Audit Report, purportedly prepared by a "Certified Forensic Loan Auditor." [6]  Resp., Ex. B, docket no. 20.  Hanson contends that the Audit Report demonstrates that WF securitized the Note in 2006, and sold it to investors as part of a larger investment trust.  As a consequence, Hanson argues that WF has effectively assigned the Note to the trust, and no longer has the authority to foreclose on the Deed.

---

[6] The credibility of the Audit Report is dubious, and the Court notes that the Federal Trade Commission has issued a consumer alert regarding forensic mortgage loan audit scams.  See Federal Trade Commission, FTC Consumer Alert, Forensic Mortgage Loan Audit Scams:  A New Twist on Foreclosure Rescue Fraud (March 2010) http://www.ftc.gov/bcp/edu/pubs/consumer/alerts/alt177.shtm.  For purposes of the present motion, however, the Court presumes that the Audit Report is legitimate.  See Costanich v. Dep't of Soc. & Health Servs., 627 F.3d 1101, 1113 (9th Cir. 2010) (holding that, on summary judgment, the Court must draw all factual inferences in the light most favorable to the nonmoving party).

The Audit Report is sparse on details, and names only the "most likely one or two" trusts in which plaintiff's Note may have been securitized. The Audit Report goes on to allege that Hanson's Note was most likely securitized in 2006 as part of the newly created Wells Fargo Home Equity Asset-Backed Securities 2006-3 Trust (the "Trust"), and suggests that Hanson's Note is the loan identified in the Trust's SEC filings as loan number 0156255317 ("Loan '317"). Id. at 2. Upon closer inspection of the actual SEC filings, however, the Audit Report's findings are completely baseless. Indeed, with the exception of the location of the properties,[7] all of the distinguishing characteristics of the two loans are different:

**TABLE 1**

|  | **Hanson's Note** | **Loan '317** |
|---|---|---|
| **Amount of Loan** | $80,000.00 | $629,000.00 |
| **Date Promissory Note Executed** | 08/06/2006 | 10/26/2006 |
| **Maturity Date** | 08/28/2021 | 11/1/2036 |
| **Date of First Payment** | 09/28/2006 | 12/1/2006 |
| **Interest Rate** | 8.24% | 8.125% |
| **Length of Loan Term** | 179 Months | 359 Months |

Long Decl., Ex. A, docket no. 18; Wells Fargo Home Equity Asset-Backed Securities 2006-3 Trust, Free Writing Prospectus (Nov. 30, 2006) available at

---

[7] Both Loan '317 and Hanson's Note relate to properties located in Anacortes, Washington. Compare Compl. at 2, docket no. 1, with id., Ex. C at 2.

http://www.sec.gov/Archives/edgar/data/1382300/000091412106003659/we6371791-fwp.txt.

The Audit Report's speculation as to the possible securitization of Hanson's Note does not create a dispute of fact, where the underlying SEC filing demonstrates unequivocally that Hanson's Note is not Loan '317.  Newman v. Cty. of Orange, 457 F.3d 991, 995 (9th Cir. 2006)  (holding that speculation is insufficient to preclude summary judgment).  The Court has exhaustively reviewed the SEC filings referenced in the Audit Report, and it appears that there is only one other loan in the Trust for property located in Anacortes, Washington: loan 0155712078 ("Loan '078").  Loan '078 is not Hanson's Note either.[8]

The Audit Report does not show that Hanson's loan was securitized or transferred, and Hanson has submitted no other evidence that calls into question the Note, Deed, appointment of successor trustee, or the notice of trustee's sale.  To the contrary, the record reflects that the documents are valid, and that Hanson has been in default of his obligations under the Note since August 2009.  See Lorber Decl., Exs. A-D, docket no. 16; Hansen Decl., Ex. A, docket no. 17.  Accordingly, Hanson has failed to meet his burden to show a genuine issue of material fact for trial, and WF is within its rights under the Note and Deed to commence foreclosure proceedings.  The

---

[8] Loan '078 was executed on September 27, 2006, in the amount of $192,500.00, at an interest rate of 7.625%, for a term of 358 months.  Wells Fargo Home Equity Asset-Backed Securities 2006-3 Trust, Free Writing Prospectus (Nov. 30, 2006) available at http://www.sec.gov/Archives/edgar/data/1382300/000091412106003659/we6371791-fwp.txt.  As set forth in Table 1 above, none of Loan '078's identifying characteristics match the terms of Hanson's Note.

Court therefore GRANTS WF's motion for summary judgment, and DISMISSES Hanson's remaining claims with prejudice.

**D.   The Lis Pendens**

As part of his efforts to halt the foreclosure process, when Hanson initiated this litigation in December 2010, he also recorded a lis pendens against the Property. Lorber Decl., Ex. D, docket no. 16.  The lis pendens was recorded with the Skagit County Auditor, and is identified as document number 201012080035.  Id.  WF requests that the Court cancel the lis pendens.  Mot., docket no. 15.

The procedure for recording and canceling a lis pendens is governed by statute as follows:

> In an action in a United States district court for any district in the state of Washington affecting the title to real property in the state of Washington, the plaintiff, at the time of filing the complaint . . . may file with the auditor of each county in which the property is situated a notice of the pendency of the action . . . .  [T]he court in which the said action was commenced may, in its discretion, at any time after the action shall be settled, discontinued or abated . . . order the notice authorized in this section to be canceled . . . and such cancellation shall be evidenced by the recording of the court order.

RCW 4.28.325 (emphasis added).  In light of this Court's Order granting WF's motion for summary judgment and dismissing Hanson's claims, the Court concludes that WF has shown good cause for the cancellation of the lis pendens.  Accordingly, the Court hereby CANCELS the lis pendens, recorded with the Skagit County Auditor as Document No. 20102080035.  WF shall record a copy of this Order with the Skagit County Auditor to finalize the cancellation.  See RCW 4.28.325.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS WF's motion for summary judgment, docket no. 15, and DISMISSES plaintiff's claims with prejudice.

Pursuant to Fed. R. Civ. P. 5.1(b) and 28 U.S.C. § 2403, the Court hereby notifies the Washington State Attorney General that the constitutional challenge brought in this case has been REJECTED.

The Clerk is directed to send a copy of this Order to all counsel of record, to plaintiff pro se, and to the Office of the Attorney General, 1125 Washington St. SE, P.O. Box 40100, Olympia, WA 98504-0100.

IT IS SO ORDERED.

DATED this 26th day of May, 2011.

Thomas S. Zilly
United States District Judge

ORDER - 12